BURGESS, Judge.
This workmen’s compensation suit was filed by Edsel Morrow against his employer, Pro, Inc., and its insurer, Rockwood In-’ surance Company, alleging plaintiff was injured on March 19, 1973, while stacking boxes of lawn mower blades in the warehouse of his employer and that the injury occurred during the scope and in the course of his employment. By supplemental petition plaintiff asked for penalties and attorney’s fees for defendants’ arbitrary and capricious refusal to pay compensation within 60 days after notice of the injury. Following trial the lower court awarded judgment for plaintiff against defendants for compensation benefits at the rate of $49 per week commencing March *360 19, 1973, and ending November 12, 1974, together with legal interest thereon from date of judicial demand on August 29, 1973, until paid and for all costs. Plaintiff was also awarded medical expenses and the trial judge fixed expert witness fees and cast them against defendants. From the above judgment both plaintiff and defendants have appealed. We affirm the judgment.
The employer and its insurer specified numerous errors allegedly committed by the trial court. However, the thrust of these complaints is that the court erred in finding plaintiff was injured while in the employ of Pro, Inc., and in finding defendants had been given notice of plaintiff’s claim as provided in Louisiana Revised Statutes 23 :1293 and 1294.
Plaintiff complains the court erred in failing to find he was totally and permanently disabled and in failing to award maximum medical fees, together with penalties and attorney’s fees.
PROOF OF NOTICE
The issue of whether plaintiff gave notice in accordance with La.R.S. 23:1293 has been vigorously contested and the conflict in the testimony regarding this issue is irreconcilable. Flowever, the circumstances surrounding the event of March 19, 1973, the date of the alleged injury, including the exchange of letters between plaintiff’s attorney and the claims manager for the insurer of Pro, Inc., convinced the trial judge that defendants had notice of the fact plaintiff was complaining of having-injured his back on that date. Although this notice was not in accordance with the statutory provisions relating thereto, nevertheless the court found the company had been made aware of plaintiff’s allegations of injury to his back at least by June 18, 1973, which notice was well within the six-month period required by R.S. 23:1291 as a prerequisite to suit.
The testimony on this issue alone consumes a large portion of the record, which we have reviewed in detail, and from which we find the trial court made a correct determination that, although the notice may not have accorded with the statutes, nevertheless there was sufficient notice to allow the company and the insurer to determine the existence and extent of the claim prior to suit being filed.
OCCURRENCE OF INJURY
The testimony of defendants’ witness, Waters, who was the supervisor in charge of filling out employees’ claims for injuries, is to the effect that Edsel Morrow was a constant complainer; that when he, Waters, heard the “rumor” that Morrow had hurt his back while working on March 19th, he discounted it because he thought plaintiff was complaining about an injury to his eye which he had suffered only a short time prior to the alleged back injury. This opinion gains support from an entry made by Waters on plaintiff’s record card:
“Last day worked 3-20-73. Was sent home to get himself straightened out physically to do his work without constant complaint. Claimed he hurt his back on job, but Pro, Inc., did not agree.”
Although there is no indication of the date of the above entry, it is indicative that Pro, Inc., had been apprised of Morrow’s alleged back injury.
Plaintiff testified he injured his back about 2:30 p. m., on March 19, 1973, approximately 30 minutes before the end of his working day; that he told LaCoure, his immediate supervisor, he had “hurt his back” packing lawn mowers and stacking lawn mower blades; that he also told Waters he had hurt his back and was told to return to work; that he reported for work the next day, March 20, 1973, but was unable to lift the boxes of blades and was told by Waters to check out at 8:30 a. m., which order he obeyed.
*361 The medical testimony affirms the fact that on March 20, 1973, plaintiff went to see Dr. Denman Crow who examined plaintiff for an eye injury and for back injuries. Dr. Crow’s findings, as set forth in a letter dated May 29, 1973, addressed to plaintiff’s attorneys, stated:
“History: Patient stated he received injury to his right eye when he stuck a splinter in his eye while working at his job. He was treated for the injury to his eye by Dr. Bryant, but still states his vision in the right eye is not good.
“He complained of lower back pain and claims he injured his back while lifting a box of steel blades weighing about 120 pounds. He said he hasn’t worked since March 19, 1973.
“Physical examination: The left eye vision is 20/20 and the right eye is 20/70, head and neck is clear, blood pressure is 120/70, heart and lungs are normal, back tests were positive for flexion and hy-perextension with pain over the lumbo-sacral joints. He has continued treatment once to twice weekly until May 23, 1973 when he was then referred to Vocational Rehabilitation for possible evaluation for vocational possibilities.
“X-ray lumbar spine was negative for fracture and bony pathology.
“Diagnosis: Chronic myoligamentous strain of the back.
“Prognosis: Guarded.”
Dr. W. W. Fox, an orthopedist, examined plaintiff on July 30, 1973, and recorded his history which repeated his previous history and the treatment administered by Dr. Crow. X-rays of the lumbar spine were taken and read by Dr. Fox and revealed a right lumbar scoliosis; separate ossifications which never fused in the transverse process of LI on the left; no narrowing of disc; no pars defects, and a “good lumbar lordotic curve”. The diagnosis by Dr. Fox was that the patient probably received a sprain of the lumbar spine and he suggested the patient be measured for a Williams brace and return for application of the brace.
Plaintiff continued to see Dr. Fox through March 18, 1975, and trial was had on April 4, 1975. Dr. Fox testified he saw and examined plaintiff in his office on numerous occasions and each time plaintiff complained of some back pain. At one visit, on June 10, 1974, plaintiff reported he had been in a “little” automobile accident but was not seriously hurt, although he stated, “it sort of stirred up his back”. He was advised he should have a myelogram to determine a possible L4 disc injury but refused.
Following the examination of November 12, 1974, Dr. Fox reported: “On examination plaintiff walks pretty slowly and has a reverse of the lumbar curve, he has no definite neurological deficit. He has no clear cut spasm. He was advised to try to continue exercises as I can’t find adequate evidence of disc diagnosis.”
In the report of March 11, 1975, Dr. Fox found the patient was having more trouble with his knee than anything; that he had some grinding of the left patellofemoral joint. On March 18, 1975, the doctor reported the patient was better in the back but the knee showed lateral instability. Dr. Fox’s final estimate of the knee injury was a recommendation of reconstruction of the knee.
We agree with the trial judge’s summation of the medical findings and his conclusion that plaintiff was injured March 19, 1973, while in the course and scope of his employment; that he was totally and permanently disabled- from that date to November 12, 1974; the subsequent difficulty plaintiff had evidenced was predominately with his knee, which, according to Dr. Fox, had no relation to the original back injury; and that plaintiff was entitled to workmen’s compensation for total and permanent disability until November 12, 1974.
*362 With regard to penalties and attorney’s fees, we also agree the notice to the employer was not in accordance with R.S. 23:1293, which requires that the notice must be in writing, shall contain the name and address of the employee, shall state in ordinary language the time, place, nature and cause of the injury, and shall be signed by the person giving or making the same.
It was shown on the trial that plaintiff was well acquainted with the method and procedure for reporting injuries occurring on the job, since he had previously reported a claim for an eye injury less than a month prior to the alleged back injury. We find, as did the trial judge, that, under the circumstances here presented, plaintiff failed to show his employer was arbitrary and capricious in refusing to timely pay the workmen’s compensation claim.
For the reasons assigned the judgment of the lower court is affirmed at appellants’ cost.